# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 17-CR-21-01-GKF |
| ) | |
| JUAN GARCIA, a/k/a "Shorty," ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Before the court is the Motion to Dismiss Indictment [Doc. No. 84] of defendant Juan Garcia.

### I. Procedural Background

On January 26, 2017, Tulsa police officers stopped two vehicles traveling from Oklahoma City for traffic violations. The lead vehicle—a Chevrolet Cruze—was driven by Gustavo Flores and contained approximately three (3) pounds of methamphetamine. The follow vehicle—a Chevrolet Silverado—was driven by Roberto Dominguez, an undocumented alien, and occupied by defendant Juan Garcia. Based on interviews with Mr. Flores and Antonio Martinez—a member of a drug ring based in Oklahoma City—Mr. Garcia was identified as the supplier of the methamphetamine. Mr. Garcia disputes that account and contends he was traveling to Tulsa to purchase a Dodge Viper.

On March 7, 2017, Messrs. Garcia, Dominguez, Ulloa, and Martinez were indicted for conspiracy to possess methamphetamine with intent to distribute. On March 20, 2017, the government dismissed the indictment against Mr. Dominguez, who was thereafter deported on April 13, 2017. Mr. Ulloa pled guilty to misprision of a felony on June 15, 2017. On that same

date, Mr. Martinez pled guilty to use of a communication facility to facilitate drug trafficking. Approximately one month later, the United States filed a superseding indictment against Mr. Garcia.

As the sole remaining defendant, Mr. Garcia now moves to dismiss the superseding indictment. He claims that Mr. Dominguez's deportation deprived him of the testimony of an eyewitness to the events in question, and therefore violated his Sixth Amendment right to compulsory process. The court held an evidentiary hearing on the motion on July 18, 2017, and received testimony from Tulsa police officers and an Immigrations and Customs Enforcement ("ICE") deportation official.

The hearing was continued to August 8, 2017, to give Mr. Garcia's counsel an opportunity to request testimony from the Assistant United States Attorney ("AUSA") in this case, Neal Hong. The court previously denied Mr. Garcia's subpoena request for Mr. Hong on grounds that defense counsel failed to comply with the requirements of 28 C.F.R. § 16.23(c). Mr. Garcia's counsel remedied that defect on July 20, 2017, when he submitted an affidavit describing the areas of testimony sought from Mr. Hong. [Def.'s Ex. 2]. Upon receipt of Mr. Garcia's request, the Department of Justice declined to allow Mr. Hong to testify. [Def.'s Ex. 3].

## II. Legal Standard & Analysis

"The Sixth Amendment guarantees a criminal defendant 'compulsory process for obtaining witnesses in his favor.'" *United States v. Caballero*, 277 F.3d 1235, 1241 (10th Cir. 2002) (quoting U.S. Const. amend. VI). That right may be violated by the deportation of a material witness. *See id.* (citing *United States v. Valenzuela-Bernal*, 458 U.S. 858 (1982)). To obtain dismissal of an indictment on that basis, a defendant must show: (1) bad-faith deportation

(2) of a witness with material and favorable testimony for the defense. *See United States v. Gonzalez-Perez,* 573 F. App'x 771, 776 (10th Cir. 2014); *Caballero*, 277 F.3d at 1241.

### III. Analysis

Mr. Garcia argues that: (1) the government acted in bad faith in deporting Mr. Dominguez; (2) Mr. Dominguez possessed material and relevant testimony favorable to the defense in this case; and (3) absent Mr. Hong's testimony, the court lacks a full record on which to adjudicate the motion to dismiss. The court addresses each argument in turn.

#### A. Bad Faith Deportation

Bad-faith deportation refers to "willful conduct" designed "to obtain a tactical advantage" or "a departure from . . . normal deportation procedures." *See Gonzales-Perez*, 573 F. App'x at 776. The record here establishes neither. *First*, nothing suggests the government's motivation in deporting Mr. Dominguez was to tactically disadvantage the defense. Uncontroverted testimony—and Mr. Garcia's own briefing—establish that the government was unaware what, if any, information Mr. Dominguez possessed relevant to this case. *See, e.g.*, [Doc. No. 84, p. 2] (Defendant's Motion to Dismiss acknowledging Mr. Dominguez was deported "before it could be determined what testimony he could provide"); [Doc. No. 110, p. 25] (Testimony of Officer Donald Cox: "I have no idea what Roberto Dominguez would say."); [*id.* at 51] (Question by Defense Counsel: Q. And given the position of the parties . . . Roberto Dominguez would be the only individual to either corroborate or contradict the story that was given by co-defendant Garcia, correct?"). And the government's subsequent investigation in this case suggests Mr. Dominguez played a relatively minor role: cell phone analysis did not reveal any substantial connection between Mr. Dominguez and the alleged conspiracy, [Doc. No. 110, pp. 26–28], and

interviews with co-conspirators revealed that they did not know—and could not identify—Mr. Dominguez, [*id.* at 43, 52–53].

Garcia's argument to the contrary—which emphasizes the investigators' failure to interview Mr. Dominguez—essentially asks the court to presume bad faith on the part of the government. The court will not do so. *See Gonzales-Perez*, 573 F. App'x 777. "The presence of bad faith must be proved, not its absence." *Id.* And even under the most permissive of standards, where—as here—"the government doesn't know what a witness will say, it doesn't act in bad faith by deporting him." *See United States v. Leal-Del Carmen*, 697 F.3d 964, 970 (9th Cir. 2012); [Doc. No. 84, p. 2]. A contrary rule—which would require the government to detain all undocumented immigrants with potentially exculpatory information—"unduly interferes with immigration laws enacted" and executed by "the political branches" of government. *See Gonzales-Perez*, 573 F. App'x 777.

Mr. Garcia responds that even absent tactical maneuvering, bad faith may be established by any improper motive—here, civil asset forfeiture. That argument lacks merit. "'The presence or absence of bad faith . . . must necessarily turn on the police's knowledge of the exculpatory value of'" testimony at the time of deportation. *See id.* at 776 (quoting *Ariz. v. Youngblood*, 588 U.S. 51, 56 n* (1988)); *see also United States v. Pena-Gutierrez*, 222 F.3d 1080, 1085 (9th Cir. 2000) (requiring tactical maneuvering). And that approach makes sense: the Compulsory Process Clause does not "grant [ ] a criminal defendant the right to secure the attendance and testimony of any and all witnesses[;] it guarantees him 'compulsory process for obtaining witnesses *in his favor*.'" *See Valenzuela-Bernal*, 458 U.S. at 867 (quoting U.S. Const., amend. VI) (emphasis added). To that end, the court holds that to establish bad faith deportation, Mr.

4

Garcia must establish some nexus between the government's conduct and the testimony Mr. Dominguez would have offered; alleged abuse of civil asset forfeiture will not suffice.[1]

*Second*, Mr. Garcia identifies no abnormality in the procedures used to deport Mr. Dominguez. The court credits the testimony of Glenn Gorniak, Jr.—the ICE officer who oversaw Mr. Dominguez's removal. [Doc. No. 110, pp. 33–41]. At the evidentiary hearing, Mr. Gorniak testified that ICE followed ordinary procedures in this case: deportation proceedings began only after ICE received notice from the U.S. Marshals Service ("USMS") that the indictment against Mr. Dominguez had been dismissed; after the USMS hold was lifted, Mr. Dominguez entered into a stipulated order of removal, which was approved by an immigration judge; and at no point did ICE receive a request to interview Mr. Dominguez—which would have been permitted—or a subpoena—which would have halted deportation proceedings. For these reasons, the court concludes Mr. Garcia has not established bad faith deportation so as to warrant dismissal of the indictment.

## B. Materially Favorable Testimony

Materially favorable testimony is that which has a "reasonable likelihood" of "affect[ing] the judgment of the trier of fact." *See Caballero*, 277 F.3d at 1241 (quotation marks and citation omitted). "It is not enough [to] . . . merely point to any conceivable benefit from [a witness's] testimony." *Id.* Rather, the "benefit [must be] so great" that "its absence [could] affect[ ] the outcome of the trial." *Id.* As a result, such testimony may "not [be] merely cumulative [of] the testimony of [other] available witnesses." *Id.* (quotation marks and citations omitted).

Mr. Garcia has not shown the existence of materially favorable testimony here. Indeed, Mr. Garcia admits that Mr. Dominguez was deported "before it could be determined what

---

[1] The court previously rejected defense counsel's construction of the bad faith requirement at the evidentiary hearing conducted on July 18, 2017. [Doc. No. 110, pp. 11–19].

5

testimony he could provide." [Doc. No. 84, p. 2]; [Doc. No. 110, p. 25]; [*id.* at 51]. Perhaps Mr. Dominguez would have corroborated Mr. Garcia's explanation for traveling to Tulsa—namely, to purchase a vehicle. Perhaps not. In any event, the law "requires more than the mere potential for favorable testimony." *See United States v. Iribe-Perez*, 129 F.3d 1167, 1173 (10th Cir. 1997). And the prospect of favorable testimony is especially remote here. For one thing, based on the plea agreements from other co-conspirators, a reasonable observer might well be skeptical that Mr. Dominguez's "testimony would have supported [Mr. Garcia's] defense that they were . . . unwitting" innocents traveling to Tulsa. *See Caballero*, 277 F.3d at 1242. For another, Mr. Dominguez "likely . . . would have invoked his Fifth Amendment privilege to remain silent" in light of the potential for exposure to criminal liability. *See id.* at 1173–74. That is supported by the government's representations about their contact with Mr. Dominguez's counsel in this case. [Doc. No. 110, p. 56] (Statement by AUSA Hong: "[S]peaking to his attorney, his attorney told me he was not inclined to speak to us."). For these reasons, the motion to dismiss indictment must be denied.

C. AUSA Testimony

Finally, Mr. Garcia argues the AUSA in this case should be compelled to testify about the decision to deport Mr. Dominguez, and the decision to dismiss the indictment against him. Without that testimony, Mr. Garcia contends that the evidentiary record on his motion to dismiss is incomplete. The court is unpersuaded. Federal agencies may promulgate regulations governing the conditions under which a government employee can testify about work-related matters. 5 U.S.C. § 301; *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 468 (1951). And here, 28 C.F.R. § 16.23(a) prohibits a Department of Justice employee—including an AUSA— "from disclosing information or producing material . . . without prior approval by the

appropriate" Department of Justice official. *See* 28 C.F.R. § 16.23(a); *United States v. Allen*, 554 F.2d 398, 406 (10th Cir. 1977). No such permission was granted in this case.

That refusal does not compel dismissal. As a threshold matter, "the regulation controlling [ ] disclosures by Department of Justice employees is valid." *Allen*, 554 F.2d at 406; *see also United States v. Soriano-Jarquin*, 492 F.3d 495, 504 (4th Cir. 2007) ("[C]ourts have applied *Touhy* regulations to the testimony of agency employees in federal criminal prosecutions."); *United States v. Bizzard*, 674 F.2d 1382, 1387 (11th Cir. 1982), *cert. denied*, 493 U.S. 1070 (1990) (rejecting constitutional challenge and quashing subpoena to Department of Justice employee); *United States v. McDowell*, No. 09-20133, 2011 WL 831134, at *1 (D. Kan. Mar. 3, 2011). And in any event, "[n]either the existence nor application of [28 C.F.R. § 16.23(a)] deprives [Mr. Garcia] of any right." *See Soriano-Jarquin*, 492 F.3d at 504. That is to say, he cannot establish prejudice: Mr. Garcia cannot say what, if any, relevant information Mr. Hong possesses, and the Confrontation Clause does not apply because "the government official[ ] [Mr. Garcia] wishes to subpoena [is] not being called by the prosecution to make a statement against him." *See McDowell*, 2011 WL 831134, at *2; *Soriano-Jarquin*, 492 F.3d at 504–05. A contrary rule—allowing prosecutors to be subpoenaed without a showing of prejudice—threatens the government's ability to maintain suit, and incentivizes defendants to subpoena AUSAs to cause a conflict of interest. That cannot be the law.[2]

\*\*\*

In closing, the court is not unsympathetic to Mr. Garcia's plight. Caselaw does seem to incentivize snap deportations of potentially exculpatory witnesses before anyone can learn what, if any, information they have. In such circumstances, defendants may struggle to make the

---

[2] Issuance of a subpoena is particularly inappropriate here, where there is no suggestion that Mr. Hong has additional information about the materiality of Mr. Dominguez's testimony.

7

required bad faith or materiality showing necessary to prevail on a compulsory process claim. But the proper remedy is not dismissal of the indictment. Rather, it is the use of cross-examination to highlight an absent witness's importance, the government's role in deportation, and its failure to identify the information a witness possesses. Before a jury, that should be remedy enough.

WHEREFORE Mr. Garcia's Motion to Dismiss Indictment [Doc. No. 84] is denied.

IT IS SO ORDERED this 8th day of August, 2017.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT